IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:08-CV-00449-BO

| | |
|---|---|
| CAROLINA POWER & LIGHT COMPANY, )<br>d/b/a PROGRESS ENERGY CAROLINAS, INC., )<br>FLORIDA POWER CORPORATION, d/b/a )<br>PROGRESS ENERGY FLORIDA, INC. and )<br>PROGRESS ENERGY SERVICE )<br>COMPANY, L.L.C., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>) **ORDER**<br>ASPECT SOFTWARE, INC., a Delaware )<br>corporation, and BELLSOUTH )<br>COMMUNICATIONS SYSTEMS, L.L.C., a )<br>Georgia limited liability company, )<br>)<br>Defendants. )<br>_____ ) | |

This matter is before the Court on a Motion to Dismiss filed by Defendant BellSouth Communications Systems, L.L.C. ("BellSouth") and a Partial Motion to Dismiss filed by Defendant Aspect Software, Inc. ("Aspect"). Plaintiffs bring several tort claims and a breach of contract claim against each Defendant. For the reasons stated below, the Court GRANTS Defendant BellSouth's Motion to Dismiss in part and GRANTS Defendant Aspect's Partial Motion to Dismiss.

BACKGROUND

Plaintiffs Carolina Power & Light Company ("CPL"), Florida Power Corporation ("FPC"), Progress Energy Services LLC ("Progress Energy") share three call centers located in

1

Raleigh, NC, Clearwater, FL and Lake Mary, FL. When Plaintiffs sought a contractor to provide a turnkey system for the three call centers, Rockwell International Corporation ("Rockwell") won the contract for the North Carolina location and Defendant BellSouth won the contract for the Florida locations.

Plaintiff Progress Energy, as agent to Plaintiff CPL, and Rockwell entered a contract relating to the turnkey system installed at the call center in North Carolina. Likewise, Plaintiff Progress Energy, as agent for Plaintiff FPC, entered an identical contract with Defendant BellSouth. Defendant BellSouth, in turn, subcontracted all of the work to be performed under the contract to Rockwell. In December 2005, Rockwell assigned all of its rights, liabilities and obligations under the contract relating to the call center in North Carolina to Defendant Aspect.

Pursuant to the terms of the contracts, Defendants Aspect and BellSouth are obligated to defend or indemnify a third-party patent infringement claim or suit against Plaintiffs so long as they are given (1) prompt written notice of all claims of any such infringement and of any suits brought against CP&L or FPC, respectively, and (2) the authority to assume the sole defense thereof through their own, respective, counsel and to compromise or settle any suits so far as this may be done without prejudice to the respective rights of CP&L or FPC to continue the use. More plainly, under the terms of the contract, Defendant Aspect is responsible for any patent infringement claims and suits brought against Plaintiff CP&L and Defendant BellSouth is responsible for any patent infringement claims and suits brought against Plaintiff FPC so long as appropriate notice is provided by Plaintiffs and Defendants are given the opportunity to lead the defense of against any such claim or suit.

In September 2001, Plaintiff Progress Energy received letter from Ronald A. Katz

Technology Licensing, L.P. ("Katz") regarding possible infringement of its patents by turnkey systems provided by Rockwell and Defendant BellSouth. Plaintiffs allege, in accordance with the terms of the contract, Rockwell and Defendant BellSouth were given "prompt written notice" of Katz's patent infringement claims and were offered the "authority to assume the sole defense thereof through its own counsel and to compromise or settle" the suit. Plaintiffs allege the notice to Rockwell and Defendant BellSouth took the form of two letters, dated December 13, 2001 and April 22, 2002, describing Katz's alleged infringement claims, notifying Rockwell and Defendant BellSouth of Plaintiffs' intent to participate in settlement discussions, and demanding a statement regarding Rockwell's and Defendant BellSouth's intentions with regard to a defense of the matter. In addition, Plaintiffs allege that on the 7th and 8th of August 2002, Plaintiff Progress Energy met separately with both Rockwell and Defendant BellSouth to discuss Katz's patent infringement claims. Plaintiffs allege that Defendant BellSouth failed to respond to any of Plaintiffs' demands for a statement regarding its intentions with regard to the defense of the matter.

On June 6, 2007, Katz brought a patent infringement action against Plaintiffs Progress Energy and CP&L in the United States District Court for the Eastern District of North Carolina. relating to the call center in North Carolina. On June 26, 2007, Plaintiff Progress Energy sent a letter to Defendant BellSouth and Defendant Aspect, informing them that Katz had filed suit against Plaintiffs Progress Energy and CP&L. The letter also stated that Plaintiff FPC, while not named in the suit, would be sued in the near future either in Florida or in North Carolina. The letter explained that Plaintiff Progress Energy had already engaged Katz in limited settlement talks and that any settlement would have to include Plaintiff FPC. The letter stated that if

Defendants BellSouth and Aspect did not assume their obligation to defend and indemnify Plaintiffs, Plaintiff Progress Energy would defend the suit itself or settle the claim as it may determine in its own discretion. The letter stated that Plaintiffs would then seek to recover costs from Defendants BellSouth and Aspect. Again, Plaintiffs allege that Defendant BellSouth failed to respond with a statement regarding its intentions with regard to the defense of the matter.

Plaintiff FPC became a named party to Katz's lawsuit on July 17, 2007. At that time, Plaintiffs did not inform Defendant BellSouth that Plaintiff FPC had been formally added to Katz's lawsuit against the other Plaintiffs.

On August 14, 2007, Plaintiff Progress Energy sent a letter to Defendants informing them a settlement had been reached and that they were seeking to be indemnified.

On September 9, 2008, Plaintiffs filed this action alleging claims of fraud, negligent misrepresentation, breach of contract, and unfair trade practices. Defendants moved separately to dismiss Plaintiffs' tort claims and Defendant BellSouth also moved to dismiss Plaintiffs' breach of contract claims against it.

## DISCUSSION

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Though specificity is not required, a complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 125 S. Ct. 1955, 1965 (2007). If the factual allegations do not nudge the plaintiff's claims "across the line from conceivable to

plausible," the "complaint must be dismissed." *Id.* at 1973.

I. Plaintiffs' fraud, negligent misrepresentation and Unfair Trade Practices Act claims

"North Carolina has recognized an 'independent tort' arising out of breach of contract only in 'carefully circumscribed' circumstances." *Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 345 (4th Cir. 1998)(quoting *Strum v. Exxon Co., USA*, 15 F.3d 327, 330-31 (4th Cir. 1994)(citing *Newton v. Standard Fire Ins. Co.*, 291 N.C. 105, 229 S.E.2d 297, 301 (N.C. 1976))). The mere failure to carry out a promise in contract does not support a tort action for fraud. *Hoyle v. Bagby*, 253 N.C. 778, 117 S.E.2d 760, 762 (N.C. 1961); see also *Strum*, 15 F.3d at 329 ("[An] attempt to turn a contract dispute into a tort action with an accompanying punitive dimension is inconsistent both with North Carolina law and sound commercial practice."); *Norman v. Tradewinds Airlines, Inc.*, 286 F. Supp. 2d 575, 595 (M.D.N.C. 2003)("In order to be liable for fraud, the promissor must do something more than just disregard or break its promises."). Rather, the "failure to perform a promise can be the basis for fraud only where there is evidence the promisor had a 'specific intent' not to perform at the time a promise was made." *Norman*, 286 F. Supp. 2d at 594 (citing *Hoyle*, 117 S.E.2d at 762). However, "where a plaintiff does nothing more than assert that a promissor never intended to honor its obligations under an agreement, dismissal as a matter of law is appropriate." *Id.* (citing *Strum*, 15 F.3d at 331) ("Mere generalities and conclusory allegations of fraud will not suffice to sustain a fraud claim.").

Here, Plaintiffs allege fraud and negligent misrepresentation relating to Defendants failure to defend and indemnify the Plaintiffs in the event of a patent infringement claim. These claims are not "identifiable" and distinct from the primary breach of contract claim, as required by North Carolina law. *Broussard*, 155 F.3d at 346 (quoting *Newton*, 229 S.E.2d at 301).

5

Plaintiffs tort claims arise out of each Defendant's performance of their contractual obligations, "not out of the type of distinct circumstances necessary to allege an independent tort." *Strum*, 15 F.3d at 332-33. Plaintiffs have not alleged any additional facts, which, taken as true, would tend to show that Defendants had the specific intent to break their promises at the time they were made. *Norman*, 286 F. Supp. 2d at 595 (dismissing plaintiff's claim for fraud where plaintiff failed to plead facts that would support claim that defendant acted with specific intent to defraud). Indeed, the mere fact that the Defendants ultimately failed to fulfill the promises they made to Plaintiffs does not raise the inference that these promises were made "with the intent to defraud." *Id.* ("Simply because [Defendants] disregarded and failed to follow the outlined policies is not evidence that [Defendants] never intended to follow the policies. Rather, it is only evidence that they did, in fact, ultimately disregard the promise.").

Similarly, Plaintiffs' Unfair Trade Practices Act claim should be dismissed. "North Carolina courts have repeatedly held that 'a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under [the UTPA,] N.C.G.S. § 75-1.1.'" *Broussard*, 155 F.3d at 347 (quoting *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 418 S.E.2d 694, 700 (N.C. Ct. App. 1992)). "North Carolina law requires a showing of 'substantial aggravating circumstances' to support a claim under the UTPA." *Id.* (quoting *Branch Banking*, 418 S.E.2d at 700 (adopting interpretation of UTPA in *Bartolomeo v. S.B. Thomas, Inc.*, 889 F.2d 530, 535 (4th Cir. 1989))). The courts have "relegate[d] claims regarding the existence of an agreement, the terms contained in an agreement, and the interpretation of an agreement to the arena of contract law." *Id.* (quoting *Hageman v. Twin City Chrysler-Plymouth Inc.*, 681 F. Supp. 303, 306-07 (M.D.N.C. 1988)). Given the contractual center of this dispute,

Plaintiffs' UTPA claims must be dismissed.

The Court GRANTS Defendant Aspect's Partial Motion to Dismiss and GRANTS Defendant BellSouth's Motion to Dismiss as it relates to Plaintiffs' tort and UTPA claims.

II. Plaintiffs' breach of contract claim against Defendant BellSouth

Plaintiffs allege Defendant BellSouth breached contract when it failed to defend and indemnify Plaintiffs against Katz's patent infringement suit. Plaintiffs allege that the conditions precedent to triggering Defendant BellSouth's obligation to defend or indemnify were satisfied by the three letters sent to Defendants on December 13, 2001, April 22, 2002 and June 26, 2002. Defendant BellSouth contends that the notice condition precedent would only have been met if a letter was issued by Plaintiffs after Katz amended its complaint to include Plaintiff FPC as a named party to the lawsuit.

When parties use clear and unambiguous language, their underlying contract must be interpreted by a court as a matter of law. *Martin v. Ray Lackey Enterprises*, 100 N.C. App. 349, 354 (N.C. App. 1990). The contract language must be given the interpretation that the parties intended when writing the contract. *Id.* While discerning the intent of the parties is at the heart of contract interpretation, intent is a question of law when the contract is free of ambiguities that would require resort to extrinsic evidence. *Lane v. Scarborough*, 284 N.C. 407, 410 (N.C. 1973).

Here, the contract provides that Defendant BellSouth should be given (1) prompt written notice of all claims of any such infringement and of any suits brought against Florida Power Corporation, and (2) the authority to assume the sole defense thereof through its own counsel and to compromise or settle any suits. The language clearly states that Plaintiffs should provide notice of "all claims" and "any suits" brought against Plaintiff FPC. The only plausible

7

definition of the term "claim" in this context would be a less formal allegation than a formally filed lawsuit. Otherwise, the inclusion of the term "claim" along side the term "suit" would be unnecessary and/or redundant. The language of the contract itself rebuts an interpretation that valid notice could only be provided by Plaintiffs after Plaintiff FPC became a named party to Katz's lawsuit.

That said, the record provides that on three separate occasions, Plaintiffs sent Defendant BellSouth letters providing notice of a Katz's patent infringement claim against Plaintiff FPC. The record also provides that Defendant BellSouth held a meeting with Plaintiffs to discuss the specific claims being brought by Katz. Each letter sent to Defendant BellSouth provided an opportunity to make a state regarding its intent regarding the defense of the matter. On each occasion, Defendant BellSouth failed to respond and make its intentions with regard to its defense of the matter known to Plaintiffs.

Plaintiffs satisfied the conditions precedent provided for by the contract with Defendant BellSouth so as to trigger Defendant BellSouth's defense and indemnification obligations under the terms of the contract. Defendant BellSouth's Motion to Dismiss with respect to Plaintiffs' breach of contract claim is DENIED.

## CONCLUSION

Defendant Aspect's Partial Motion to Dismiss is GRANTED. Defendant BellSouth's Motion to Dismiss is GRANTED in part and DENIED in part.

SO ORDERED.

This 2 day of February, 2009.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE